UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| DEBRA POND, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:16 CV 74 RWS |
| ) | |
| NANCY A. BERRYHILL[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### **MEMORANDUM AND ORDER**

This action is before me for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") finding that Plaintiff Debra Pond ("Plaintiff" or "Pond") was not disabled, and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434. For the reasons set forth below, I will reverse the decision of the Commissioner and remand for further proceedings.

I. *Background*

Pond was born on October 14, 1952. She filed an application for disability insurance benefits on November 2, 2012. Pond alleged a disability onset date of

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

March 15, 2012. Pond alleged that she suffers from several physical and mental impairments, including chronic obstructive pulmonary disease, asthma, degenerative disc disease, osteoarthritis, affective disorders, obsessive-compulsive disorder, and obesity.[2] The Commissioner initially denied Pond benefits on March 7, 2013. She requested a hearing before Administrative Law Judge Michael Comisky (the "ALJ"), which was held on May 27, 2015. At the hearing, Pond and a vocational expert testified. The ALJ issued a decision on June 29, 2015, which concluded that Pond was not disabled under the Act because she possessed the residual functional capacity ("RFC") to perform relevant work. The ALJ's decision is summarized in greater detail below. Pond requested a review with the Appeals Council, which the Appeals Council denied on August 31, 2016. Pond has exhausted all of her administrative remedies, and the ALJ's decision is final for review purposes.

Pond filed this action in order to seek a reversal of the Commissioner's decision and remand for a new administrative hearing. Pond argues that the ALJ's decision was not supported by substantial evidence on the record as a whole. In particular, Pond asserts that the ALJ erroneously failed to derive a proper mental RFC by making inconsistent findings, improperly relying upon the outdated

---

[2] Pond's arguments focus upon her mental impairments and mental RFC. As a result, I will not discuss her physical impairments in depth.

opinion of a non-examining State agency consultant, and failing to provide a sufficient narrative statement.

   a. *Medical Record and Evidentiary Hearing*

I adopt Plaintiff's uncontroverted Statement of Material Facts (Doc. 15-1), as amended by Defendant's Response (Doc. No. 20-1), along with Defendant's Additional Statement of Facts (Doc. No. 20-2) and Plaintiff's Response to Defendant's Additional Statement of Material Facts (Doc. No. 21-1). These facts, taken together, present a fair and accurate summary of the medical record and testimony at the evidentiary hearing. I will discuss specific facts as they are relevant to the parties' arguments.

   b. *ALJ Decision*

The ALJ concluded that Pond was not disabled. To begin, the ALJ found that Pond meets the insured status requirements under the Act and had not engaged in substantial gainful activity since the alleged disability onset date. At step two, regarding whether Pond has a severe impairment or combination of impairments, the ALJ held that Pond has the following severe impairments: chronic obstructive pulmonary disease, asthma, degenerative disc disease, osteoarthritis of the right thumb joint, affective disorders, obsessive-compulsive disorder ("OCD"), and obesity. *See* 20 C.F.R. § 404.1520(c). The ALJ also found that Pond has

impairments of hypertension and cardiac arterial disease, which he classified as insufficiently severe to constitute disabling impairments.

At step three, the ALJ declined to find that Pond's impairments met or are equal to one of the enumerated deemed-disabling impairments under the regulations and Psychiatric Review Technique ("PRT"). The ALJ held that Pond's mental impairments (i.e. the affective and obsessive-compulsive disorders) failed to satisfy the "Paragraph B" and "Paragraph C" criteria under Listings 12.04 (affective disorders), 12.06 (anxiety-related disorders), 12.08 (personality disorders), and 12.09 (substance addiction disorders). *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpart P, App. 1. In his PRT analysis, the ALJ noted Pond's abilities to reside alone, meet her personal care and grooming needs, perform chores and tasks, care for her mother, manage finances, drive, and have positive interactions with treatment providers. The ALJ also found that Pond experienced only one or two episodes of decompensation which were of an extended duration. With respect to social functioning, the ALJ stated that Pond could have frequent contact with coworkers, supervisors, and the general public. Based upon these observations, the ALJ concluded that Pond had only a mild restriction in her ability to engage in activities of daily living and no more than mild limitations with respect to social functioning, and concentration, persistence,

and pace. As a result, the ALJ concluded that Pond's mental limitations were not severe enough to qualify as disabling under the PRT analysis.[3]

Next, the ALJ found that Pond has the residual functional capacity ("RFC") to perform light work.[4] The ALJ asserted that Pond can lift or carry 20 pounds occasionally and 10 pounds frequently, stand, walk, or sit for 6 hours in an 8 hour workday, and push or pull within the lifting and carrying limits. Overall, the ALJ concluded that the medical evidence did not support Pond's allegations – Pond's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely credible. The ALJ determined that Pond can have frequent contact with coworkers, supervisors and the general public. The ALJ discussed aspects of Pond's history of physical and mental impairments. In analyzing Pond's mental issues, the ALJ noted Pond's prior inpatient treatment for depression with suicidal ideation, one of her suicide

---

[3] Under 20 C.F.R. § 404.1520a (d)(1), if the ALJ concludes that the limitation in the three functional areas of the PRT is "none" or "mild," generally the impairment will not be considered severe unless the evidence otherwise indicates more than a minimal limitation in the claimant's ability to do basic work activities.

[4] 20 C.F.R. § 404.1567(b) defines "light work" as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."

attempts, and ongoing suicidal ideation and difficulties with OCD. While the ALJ acknowledged that Pond had suffered "two acute exacerbations" of her mental impairments since the alleged onset date, the ALJ linked her symptoms to periods of unusual stress and found that Pond's mental status was otherwise normal and "generally well-controlled with psychotropic medications." Considering Pond's employment history, the ALJ determined that the record did not document any worsening or onset of new impairments at the alleged disability onset date. The ALJ noted that Pond continued working after the alleged onset date and concluded that she stopped working for non-disability reasons, including taking early retirement through Social Security in December 2014.

    The ALJ addressed opinion evidence from two non-examining state agency consultants and one treating physician. The ALJ gave "significant weight" to the opinions of non-examining state agency consultants Denise R. Trowbridge, M.D. and psychologist Keith L. Allen, Ph.D. The ALJ asserted that these consultants provided detailed narratives, based upon a comprehensive review of the record. Although some evidence was added to the record after the state agency consultants prepared their opinions, the ALJ reasoned that the new evidence was generally cumulative. The ALJ opined that the "only significant changes" concerned certain physical, rather than mental, impairments. The ALJ gave no weight to the Medical

Source Statement prepared by Pond's treating physician W. Alex Dymek, M.D. The ALJ reasoned that Dr. Dymek's opinion was not supported by the evidence of record, was inconsistent with the doctor's treatment recommendations, and was presented in a checkbox format. Additionally, the ALJ gave little weight to the Global Assessment of Functioning ("GAF") scores that Pond received during the relevant period, which ranged from 30 to 46.[5]

     Finally, the ALJ held that Pond is capable of performing past relevant work as a personnel administrative specialist. Considering Pond's job history and educational background, as well as the testimony of a vocational expert, the ALJ asserted that this past work does not require the performance of work-related activities precluded by Pond's RFC. Additionally, the ALJ cited the vocational expert's testimony for the proposition that Pond could perform jobs available in the national and regional economy such as a loss claim clerk, claims clerk I, and report checker.

---

[5] A GAF score represents a clinician's judgment, based on a scale of 1 to 100, of the claimant's overall ability to function in social or occupational settings. *See* Diagnostic & Statistical Manual of Mental Disorders (4th ed. Text Revision 2000) (DSM-IV) at 32. GAF scores of 31 to 40 indicate "major" impairment in social or occupational functioning and scores of 41 to 50 reflect "serious" impairment in these areas. DSM-IV at 32. The Commissioner and Eighth Circuit have given limited importance to GAF scores in recent years. *See* Nowling v. Colvin, 813 F.3d 1110, 1116 (8th Cir. 2016). Here, the ALJ reasoned that the GAF score may have little to no bearing on Pond's capabilities and should hold little weight.

II. *Discussion*

*a. Legal Standard and Statutory Framework*

In reviewing a denial of Social Security disability benefits, a court "must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a severe impairment or combination of impairments. Specifically with respect to mental disorders, the Commissioner must consider the claimant's degree of

8

limitations in four areas of functioning: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the Commissioner's regulation. If not, the Commissioner asks at step four whether the claimant has the RFC to perform her past relevant work. A disability claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The Eighth Circuit has characterized RFC as the ability to do requisite work-related acts "day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc), *abrogated on other grounds*, 524 U.S. 266 (1998).

If the claimant can perform her past work, the claimant is not disabled. If she cannot perform her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors, including age, education, and work experience.

Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010). If nonexertional limitations significantly affect a claimant's ability to work, the ALJ is required to consult a vocational expert. Baker v. Barnhart, 457 F.3d 882, 894 (8th Cir. 2006).

   *b. Analysis*

Pond argues that remand is required because the ALJ failed to derive a proper mental RFC supported by substantial evidence. Pond asserts that the ALJ provided inconsistent findings, relied upon inadequate doctor's opinions, and framed an insufficient narrative. For the reasons that follow, I will grant Pond's request for remand.

First, Pond argues that the ALJ made inconsistent findings in assessing Pond's mental impairments under steps two and three and the RFC analysis. The ALJ concluded that Pond's mental impairments of affective disorders and obsessive compulsive disorder did not qualify for disability treatment under the regulations because Pond had no more than mild limitations in her daily activities, social functioning, and concentration, persistence, and pace. Pond argues that the ALJ failed to demonstrate how those conclusions supported the mental RFC, particularly in light of evidence suggesting more than mild limitations in social functioning, concentration, persistence, and pace. At a minimum, Pond asserts that the ALJ should have reconciled these inconsistent findings in greater depth. The

Commissioner argues that the inconsistencies alleged by Pond do not invalidate the ALJ's conclusions, which were supported by evidence in the record.

An ALJ determines a claimant's RFC "based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports;" instead, the RFC assessment should include a narrative discussion demonstrating how the evidence logically supports the ALJ's conclusions. Strongson, 361 F.3d at 1070. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *See* Steed v. Astrue, 524 F.3d 872, 875 (8th Cir. 2008) (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)).

Here, the ALJ should have more fully considered the evidence regarding Pond's mental limitations and explained any inconsistencies. The record demonstrates that Pond had ongoing symptoms of depression and OCD, including suicidal ideation, isolation, obsessive thoughts, compulsive behaviors, crying spells, low GAF scores, insomnia, a depressed and flat mood, lack of

11

interest at work, and difficulty with concentration. It is not entirely clear how the ALJ reached certain conclusions as to Pond's mental limitations. Under the mental RFC analysis, the ALJ found that Pond could engage in frequent social interactions. The ALJ failed to discuss affirmative evidence concerning Pond's social abilities, but instead merely noted that the record did not document that Pond had any problems in functioning socially when seeking treatment. The ALJ acknowledged that Pond's mental limitations persisted despite treatment, but suggested that Pond was responsible since she failed to seek psychological treatment. The record demonstrates that Pond did continue to seek treatment, and any such inability to obtain treatment was caused by ongoing financial, stress, and mental illness issues. Given these inconsistencies and ambiguities, the ALJ should provide greater clarity as to how he developed the mental RFC.

Next, Pond asserts that the ALJ improperly relied upon the medical opinions in the record. In assessing Pond's mental RFC, the ALJ only gave weight to the non-examining State agency consultant opinion of psychologist Keith Allen, PhD ("Allen"). Allen's opinion, prepared in March 2013, focused on Pond's physical abilities and indicated generally that Pond had no mental health limitations in her ability to work. Pond asserts that this opinion did not constitute substantial evidence with respect to her mental RFC. Pond further

argues that Allen did not fully consider the evidence, which could have supported a finding of more than mild mental limitations, and failed to conduct a mental RFC assessment. The Commissioner asserts that it was proper for the ALJ to rely upon the opinion of Allen, a highly qualified state agency consultant, because the ALJ may use discretion in resolving conflicts among the evidence and the various medical opinions. The Commissioner further argues that the record as a whole provided substantial evidence for the ALJ's ultimate conclusion regarding RFC.

The ALJ may decide the extent to which he wishes to rely upon each medical opinion, but he "must give good reasons for the weight apportioned." Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015); 20 C.F.R § 404.1527(d)(2). "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." Id. (quoting Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003)). On the other hand, "[t]he opinion of a treating physician is accorded special deference under the social security regulations" and is "normally entitled to great weight." Vossen v. Astrue, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting Prosch v. Apfel, 201 F.3d 1010, 1012

(8th Cir. 2000)).[6] Nevertheless, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." Vossen, 612 F.3d at 1016 (emphasis omitted) (quoting Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)). With respect to new evidence regarding changed conditions, a consultative examination to secure additional evidence may be required if the record indicates a change in the claimant's condition that would likely impact her ability to work, but current severity is not established. *See* 20 C.F.R. § 404.1519a(b).

In assessing Pond's mental limitations, the ALJ did not give weight to the opinion of any treating or examining physician or seek out an additional medical opinion. Instead, the ALJ gave significant weight to the opinion of Allen, a non-examining agency consultant. Allen's opinion did not constitute substantial evidence with respect to the "crucial issue" of Pond's mental limitations. Additionally, Allen's opinion did not consider subsequent evidence suggesting Pond's worsening mental limitations, including hospitalizations for suicidal ideation and ongoing issues with treatment. While the ALJ considered evidence

---

[6] This continues to be true for Pond's claim because it was filed before March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply."); Id. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."); Id. § 404.1527(c)(2) ("Generally, we give more weight to medical opinions from your treating sources.").

beyond Allen's opinion, such as treatment records, examination results, and diagnostic tests, that evidence was insufficient to establish the mental RFC without a consistent physician's opinion.

Finally, Pond asserts that the ALJ generally failed to provide a sufficient narrative statement in support of the mental RFC. Pond alleges that the ALJ does not adequately reference evidence from the record regarding Pond's mental RFC and work-related limitations. To the extent that the record lacked sufficient evidence, Pond reasons that the ALJ should have obtained additional information, such as a consultative examination by a psychologist. Pond also suggests that the ALJ failed to fully consider new and additional evidence in his narrative. The Commissioner argues that the ALJ's interpretation of the medical opinion evidence was proper. The Commissioner asserts that the decision was based upon the record as a whole, including all medical evidence, treatment records, self-reported complaints, and the state agency physicians' opinions. The Commissioner further states that the ALJ provided the requisite narrative and fulfilled his duty to develop the record because he explained each conclusion with reference to evidence in record, no crucial issue remained undeveloped, and sufficient evidence existed to determine disability.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press [her] case." Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) (quoting Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)). The ALJ is required to consider all evidence in the record and obtain additional information if a crucial issue is underdeveloped. *See* Smith v. Barnhart, 435 F.3d 926, 930 (8th Cir. 2006) (a social security hearing is non-adversarial proceeding, and ALJ has duty to develop record fully; duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped); Conklin v. Astrue, 360 Fed.Appx. 704, 707 (8th Cir. 2010) (further development of the record was warranted where "the ALJ was arguably on notice of the need to clarify [the claimant's] mental RFC with her treating psychiatrists.").

In this case, the ALJ failed to satisfy his duty to fully and fairly develop the record and did not provide a sufficient narrative statement in support of the mental RFC. Because the record suggested mental limitations, the ALJ should have more fully developed and considered the record as to Pond's mental RFC. As previously discussed, the ALJ improperly relied upon on his own inferences about Pond's mental health and whether the new information was significant. The ALJ also failed to consider the opinion of any examining physician as to mental RFC.

Given various sources in the record, the ALJ was arguably on notice of the need to obtain additional evidence regarding Pond's mental RFC. The ALJ should have considered the new evidence and sought additional medical opinion evidence rather than relying upon his own interpretation of the evidence in the record. The record as a whole does not support his conclusions, so remand is required.

Based on the foregoing reasons, I conclude that the ALJ's mental RFC assessment was not supported by substantial evidence on the record as a whole. On remand, the ALJ must ensure that he considers and discusses medical evidence which sufficiently supports his mental RFC conclusion.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** to the Commissioner for further consideration in accordance with this Memorandum and Order.

A judgment in accordance with this Memorandum and Order will be entered separately.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 6th day of November, 2017.